UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| J.F. NUT COMPANY | § § § | |
| *Plaintiffs.* | § § | |
| v. | § § | CAUSE NO. 1:17-CV-405 |
| SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP | § § § § | |
| *Defendants.* | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW J.F. NUT COMPANY, Plaintiff in the above entitled suit (hereinafter referred to as "Plaintiff"), complaining of Defendants SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP (hereinafter jointly referred to as "Defendants"), Defendants in the above entitled suit, and would show the court the following:

### SUMMARY

1.   Plaintiff is filing the following causes of action, jointly and alternately, against Defendants SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP: (1) a breach of contract action pursuant to Texas common law; (2) a negligence cause of action pursuant to Texas common law; (3) a quantum meruit claim pursuant to Texas common law; (4) a suit on sworn account pursuant to the Texas R. Civ. P. 185; (5) an unjust enrichment claim pursuant to Texas common law; and (6) a fraud cause of action pursuant to Texas common law against Defendant SAN SABA PECAN EXPORTS CORPORATION and Defendant SAN SABA PECAN, LP.

### JURISDICTION AND VENUE

2.   This Court has diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332 (a)(1) because Plaintiff is a corporation which is headquartered in Mexico and whose principle place of business is in Mexico, and Defendants SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP are corporations whose principle place of business is in Texas. Further, the matters in controversy exceed the sum or value of $75,000, exclusive of interest and costs.

3.      In addition, pursuant to Federal Rule of Civil Procedure 4(k)(1)(a), this Court has personal jurisdiction over Defendants SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP because Plaintiff's claims and causes of action against both Defendants arise out of both Defendants' contacts with Texas.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5.      Plaintiff J.F. NUT COMPANY is a business headquartered, and maintaining its principle place of business, in Mexico at all times relevant to this suit.

6.      Defendant SAN SABA PECAN EXPORTS CORPORATION is a Texas Corporation with its principle place of business located at 2803 W. Wallace Street, San Saba, Texas 76877. Defendant SAN SABA PECAN EXPORTS CORPORATION may be served with process by serving its registered agent Capitol Corporate Services, Inc located at 206 E. 9th Street, Suite 1300, Austin, Texas 78701 or where any duly authorized agent may be found.

7.      Defendant SAN SABA PECAN, LP is a Texas Limited Partnership with its principle place of business located at 2803 W. Wallace Street, San Saba, Texas 76877. Defendant SAN SABA PECAN, LP may be served with process by serving its registered agent Bradley D. Bartek located at 201 Main Street, Suite 1660, Fort Worth, Texas 76102 or where any duly authorized agent may be found.

## STATEMENT OF FACTS

8.      The aforementioned causes of action arise out of a contract arrangement between Plaintiff and Defendants for the sale of nuts. Plaintiff is a company that sells nuts to distributors based out of Chihuahua, Mexico. Defendants are a pecan wholesaler based out of San Saba, Texas.

9.      On or about December of 2015, Plaintiff and Defendants began negotiating for Plaintiff to provide Defendants with goods – more specifically, pecans of different varieties. The parties entered into a contract whereby Plaintiff would ship pecans to Defendants on an F.O.B. basis and, upon the

pecans passing minimum standards, Defendants would pay Plaintiff at the price agreed to prior to shipping.

10. In early December, prior to shipping the first load of pecans to Defendants, Plaintiff provided Defendants with its bank information for making deposits. The company listed as the recipient was "JF Nut Company," Plaintiff's company name.

11. From approximately December of 2015 until approximately early February of 2016, the above arrangement continued without issue. During this period, Plaintiff and Defendants maintained regular contact via e-mail and text messages regarding orders, prices, the status of deliveries, minimum standards testing results, and payment status.

12. On or about the middle of February 2016, upon information and belief, an unknown third party hacked into Plaintiff's primary business email account and sent Defendants an e-mail requesting that the next payment deposit for goods be wired to a new bank account to an individual beneficiary without any relation to Plaintiff and a suspicious name. Without making any attempts to confirm this information and contrary to the parties' prior business dealings, Defendants negligently paid the full amount owing based on the erroneous information provided by an unknown the third party. Over the next couple of weeks, unknown to Plaintiff, Defendants continued to pay the criminal third party all the sums owed to Plaintiff even though the criminal third party changed the wiring instructions three times to names unconnected to Plaintiff and that should have arisen a suspicion in Defendant. At no point did Defendant take any steps to verify the authenticity of these directions with Plaintiff.

13. During this time Defendants recklessly represented to Plaintiff that the money was or would be deposited to Plaintiff's account, despite the fact that Defendants knew, or reasonably should have known, the funds had not, in fact, been deposited to Plaintiff's account. Plaintiff, relying upon this representation, continued to deliver goods to Defendants which Defendants accepted and represented to Plaintiff had passed all quality tests.

14. True and correct copies of the invoices from Plaintiff to Defendants evidencing the debt at issue are attached hereto as **Exhibit A** and have been provided to Defendants on previous occasions.

15. Defendants have failed to make full payment to Plaintiff on the delinquent amounts owed in the attached invoices.

16. Plaintiff has repeatedly informed Defendants of the deficiency in telephone conversations and in writing and requested that Defendants pay the outstanding debt. Despite Plaintiff's efforts, Defendants have failed to pay this delinquency. As of the filing of this complaint, the total amount delinquent, due, and owing to Plaintiff J.F. NUT COMPANY from Defendants is **$1,539,136.50**, exclusive of interest and attorney's fees. The amount is based on the invoices contained in **Exhibit A** for invoices A1067, A1074, A1080, A1088, A1089, A1090, and A1094. Based on information and belief, the amount paid to the unknown third party was $1,539,136.50. Plaintiff J.F. NUT COMPNAY did not receive any direct or indirect benefit from the $1,539,136.50 that was wired negligently, fraudulently, wrongfully, and without authorization to the unknown third party.

17. On multiple occasions, demand was made on Defendants for payment. Although Defendants received the benefit of the product, Defendants have refused and continue to refuse to pay the amounts due and owing under the invoices and agreement. As a result, Plaintiff was required to retain legal counsel to pursue its legal claims. All conditions precedent have been performed or occurred pursuant to Texas Rule of Civil Procedure 54.

18. Plaintiff attaches hereto the affidavit of Jorge Flores, Managing Owner of J.F. NUT COMPANY, which verifies the above facts as stated therein, as **Exhibit B** and incorporates it by reference into this petition.

## COMMON LAW BREACH OF CONTRACT BY DEFENDANTS

19. Paragraphs 8 through 18 of this Complaint are incorporated as if set forth verbatim herein.

20. Plaintiff J.F. NUT COMPANY entered into a valid and enforceable written and oral contract with Defendants SAN SABA PECAN EXPORTS CORPORATION and SAN SABA PECAN, LP to provide Defendants with pecans of various varieties in consideration for Defendants' agreement and promise to pay for all pecans received by them, upon the nuts meeting the minimum quality requirements.

21. Plaintiff relied upon representations made by Defendants that Plaintiff would be paid in full for all the nuts that it sent Defendants. Under the terms of the contract, Plaintiff would provide the nuts to Defendants on an F.O.B. contract. Defendant would test a portion of the nuts to ensure they met the agreed upon minimum quality standards. Upon meeting the standards, Defendants would pay Plaintiff the full amount owing to the bank account information provided to Defendant by Plaintiff.

22. Defendants have accepted all shipments of nuts sent to them by Plaintiff.

23. Defendants have represented to Plaintiff that all shipments of nuts received and accepted by Defendants have met the agreed upon minimum quality standards.

24. Defendants have failed to make full payment to Plaintiff for the goods they accepted from Plaintiff.

25. Defendants have breached the contract with Plaintiff by negligently and recklessly paying a criminal third party the monies owed to Plaintiff without taking any reasonable steps to ascertain the authenticity of the new wiring instructions.

26. As a result of Defendants' breach, Plaintiff sustained damages as described in further detail herein. The total amount delinquent, due, and owing to Plaintiff from Defendants is **$1,539,136.50,** plus all interest accrued to date and attorneys' fees.

27. The total balance owed of **$1,539,136.50** as of the filing of this petition, plus interest and attorney's fees, is true and just, due, unpaid, and all lawful and just offsets, payments, and credits have been allowed. Plaintiff makes a claim herein for all damages allowed by law for breach of contract.

28. All conditions precedent to recovery by Plaintiff have been performed, have occurred, or alternatively have been waived.

### NEGLIGENCE BY DEFENDANTS

29. Paragraphs 8 through 28 of this Complaint are incorporated herein as if set forth verbatim herein.

30. Defendants owed Plaintiff a duty to perform the contract with care, skill, and faithfulness. Defendants had a duty to perform its contractual obligations to Plaintiff with reasonable skill and

diligence so as not to harm Plaintiff in its performance. Further, Defendants had a basic duty of care to pay Plaintiff the monies owed to it in a diligent and professional manner.

31. Defendant breached this duty by negligently and recklessly paying a criminal third party the monies owed to Plaintiff without taking any reasonable steps to avoid doing such. Plaintiff alleges that its damages were proximately caused by the negligence of Defendants arising from one or more of the following acts or omissions on the part of Defendants:

  a. Failure to use reasonable care before transferring large sums of money to an unknown entity;
  b. Failure to use reasonable care before transferring large sums of money under reasonably suspicious circumstances;
  c. Failure to set up best practices to avoid criminal interference by third parties;
  d. Failure to employ best practices and procedures for verifying change of payment instructions;
  e. Failure to employ best practices and procedures for verifying change of payment instructions by using at least a two-pronged system requiring both written and verbal confirmation of said changes;
  f. Failure to use due diligence to verify change of payment instructions by using secondary contact information (i.e. using a form of communication different from the one used in the initial request in order to verify the information);
  g. Failure to train its employees responsible for sending payments to recognize signs of criminal interference;
  h. Failure to train its employees responsible for sending payments to recognize signs of email hacking;
  i. Failure to train its employees responsible for sending payments on the known dangers of email hacking;
  j. Failure to train its employees responsible for sending payments on procedures for verifying change of payment instructions;
  k. Failure to require a PIN or other form of security password for validating change of payment instructions;
  l. Failure to require dual approval and/or countersignatures on high value monetary transfers;
  m. Failure to employ procedures to set up a mandatory minimum hold before payment instructions can be changed to avoid criminal interference;
  n. Failure to employ procedures for testing new payment instructions with a zero-dollar or nominal transaction to test receipt prior to sending high value monetary transfers;
  o. Negligently continuing to wire amounts of money to suspicious accounts even after being notified there was an issue with the receipt of payment;
  p. Negligently failing to take any steps to verify change of payment instructions;
  q. Negligently failing to call Plaintiff to verify change of payment instructions;
  r. Failure to employ 'call-back' procedures to verify change of payment instructions;
  s. Plaintiff reserves the right to add further acts of negligence as discovery continues.

32. Each of which acts or omissions were other than what a reasonable and prudent person would

have been doing under the same or similar circumstances. Each of which acts or omissions was a proximate cause of Plaintiff's damages.

## QUANTUM MERUIT

33. Paragraphs 8 to 32 of this Complaint are incorporated herein as set forth verbatim herein.

34. Alternatively and without waiving the foregoing, Plaintiff asserts a claim against Defendants for Quantum Meruit. As set forth above, Plaintiff provided goods to Defendants, and these goods were accepted and retained by Defendants. Defendants have received the benefit of the goods and Plaintiff has not received the benefit of payment. Defendants had reasonable notice that Plaintiff expected compensation for these goods. *See* **Exhibits A and B.**

35. As a result, Plaintiff sustained damages described herein and is entitled to recover from Defendants under its claim of Quantum Meruit. The total amount delinquent, due, and owing to Plaintiff from Defendants as of the filing of this petition is **$1,539,136.50**, plus all interest accrued to date and attorney's fees.

## SUIT ON SWORN ACCOUNT

36. Paragraphs 8 through 35 of this Complaint are incorporated herein as if set forth verbatim herein.

37. Plaintiff provided the goods at issue to Defendants on an open account. Defendants accepted these materials, and became bound to pay Plaintiff's designated charges, which were usual, reasonable, and customary for such materials. The invoices attached hereto as **Exhibit A** to this Complaint represent Defendants' current account with Plaintiff and is a true and accurate representation of the outstanding invoices, the date of each of the invoices, and the amount of each of the invoices. The summary – along with the invoices – represents the record of the transactions Plaintiff J.F. NUT COMPANY systematically keeps in the ordinary course of business. The total amount owed and delinquent under the account equals **$1,539,136.50**, plus interest, as of the filing of this petition.

38. The amounts of the invoices represent reasonable and customary charges for these types of materials. *See* **Exhibit B.**

39. Defendants accepted these goods and agreed to pay the stated amounts when they received the equipment.

40. Defendants have failed to make full payment to Plaintiff on the delinquent amounts owed in the invoices.

41. The total balance on the account of **$1,539,136.50** as of the filing of this petition is true and just, due, and all lawful and just offsets, payments, and credits have been allowed. The affidavit of Plaintiff J.F. NUT COMPANY's owner and managing member – Jorge Flores – verifies these facts as set forth therein. *See* **Exhibit B.**

42. All conditions precedent to recovery by Plaintiff have been performed, have occurred, or alternatively have been waived.

## UNJUST ENRICHMENT

43. Paragraphs 8 through 42 of this Complaint are incorporated herein as if set forth verbatim herein.

44. Plaintiff has provided Defendants with goods which Defendants accepted and represented passed all the minimum quality standards agreed to by both parties. Defendants, though retaining the profit and benefits of the goods provided to them by Plaintiff, have not paid Plaintiff the amount owed to Plaintiff for said goods.

45. As a result of the receipt and acceptance of the goods in question, Defendants have been unjustly enriched. Defendants are accountable to Plaintiff for the benefit they have unjustly obtained at the expense of Plaintiff. Therefore, Defendants should be disgorged of the benefit and compensate Plaintiff for the value of the goods in question: **$1,539,136.50**, plus interest.

46. All conditions precedent to recovery by Plaintiff have been performed, have occurred, or alternatively have been waived.

## COMMON LAW FRAUD

47. Paragraphs 8 through 46 of this Complaint are incorporated herein as if set forth verbatim herein.

48. Defendants recklessly represented to Plaintiff that all monies Plaintiff alleges are owed to it were paid to Plaintiff's account. This representation was false as the monies had, in fact, been paid to a criminal third party. Defendants reasonably should have known that such monies had not, in fact, been paid to Plaintiff.

49. Plaintiff relied on these recklessly made false representations and continued to ship goods to Defendants. Further, Plaintiff relied upon Defendants' recklessly made false representations and did not investigate further into the matter.

50. As a direct and proximate cause of Plaintiff's reliance on Defendants' representations, Plaintiff was damaged in the amount of **$1,539,136.50**, plus interest, as of the filing of this petition.

51. All conditions precedent to recovery by Plaintiff have been performed, have occurred, or alternatively have been waived.

## ATTORNEYS' FEES

52. Paragraphs 8 through 51 of this Complaint are incorporated herein as if set forth verbatim herein.

53. Plaintiff would show the Court that the recovery of attorney's fees is authorized as provided under and according to the provisions of Section 38.001 of the Texas Civil Practice and Remedies Code, and Plaintiff further sues for reasonable attorney's fees, including fees for any appeal, insomuch as Plaintiff has been required to employ the undersigned attorneys to file suit and has agreed to pay them reasonable attorney's fees for their services. Demand has been presented to Defendants in accordance with the agreement of the parties and/or Section 38.001 of the Texas Civil Practice and Remedies Code.

## DAMAGES

54. Paragraphs 8 through 54 of this Complaint are incorporated herein as if set forth verbatim herein.

55. The principal balance due to Plaintiff J.F. NUT COMPANY as of the filing of this petition from Defendants is **$1,539,136.50**, plus interest and attorney's fees, after allowing for all just and lawful

offsets, payments, and credits. This amount represents J.F. NUT COMPANY's damages for suit on breach of contract, negligence, quantum meruit, sworn account, unjust enrichment, and fraud.

56. Plaintiff is further entitled to attorney's fees and pre-judgment and post-judgment interest.

## JURY DEMAND

57. Plaintiff respectfully requests a trial by jury of the issues in this case.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that the Defendants be cited to appear and answer, and that upon final trial, Plaintiff has judgment against Defendants for all relief requested, for pre-judgment interest, post judgment interest, for costs of this suit, punitive damages and for such other and further relief, general and special, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

**Espinoza Law Firm, PLLC**
2211 Danbury Street
San Antonio, TX 78217
210.229.1300 t
210.229.1302 f
www.espinozafirm.com


___/s/ Javier Espinoza_____
**JAVIER ESPINOZA**
Texas Bar No. 24036534
javier@espinozafirm.com
**MICHAEL D. TUTTLE**
michael@espinozafirm.com
Texas Bar No. 24037620

And

Manuel Alejandro Pelaez-Prada
Texas Bar No. 24027599
mpp@lonestaradr.com
Pelaez Prada, PLLC
22211 IH-10 West, #1206
San Antonio, Texas 78257
210.361.0070 t