IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

J.F. NUT COMPANY,

Plaintiff,

v. Civil Action No.: 1:17-cv-405-SS

SAN SABA PECAN, LP,

Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT SAN SABA PECAN, LP'S MOTION FOR SUMMARY JUDGMENT**

Defendant San Saba Pecan, LP ("San Saba") moves for summary judgment on all of Plaintiff J.F. Nut Company's claims pursuant to Federal Rule of Civil Procedure 56. San Saba is entitled to summary judgment for the following reasons:

1. Plaintiff failed to institute any measures to guard against third-party access to its e-mail account and admits that it could have discovered the hack by accessing the allegedly fraudulent e-mails.[1] By its own negligence, Plaintiff gave the third party apparent authority to use its e-mail account. San Saba merely complied with instructions from a third party to whom Plaintiff gave apparent authority.

2. Plaintiff's negligence claim is barred by the economic-loss doctrine, because Plaintiff merely seeks recovery of its contract damages.

3. The parties agree that there is an express contract governing the subject matter, so

[1] For purposes of this motion, San Saba assumes that Plaintiff's e-mail was hacked as it alleges. In doing so, San Saba does not concede that any hack occurred, as it is Plaintiff's burden to prove its claims. Plaintiff lacks evidence of any such hack or other compromise of its e-mail and has presented no evidence confirming that the e-mails it claims were sent by third parties were not, in fact, sent by one of Plaintiff's employees. Indeed, Plaintiff cannot prove any hack occurred because it did no investigation into the alleged hack and did not preserve any data associated with the alleged hack so that it could conduct an investigation. *See* Deposition of Jorge Flores ("Flores Dep.") at 83:25-88:15, attached as Exhibit 1.

Plaintiff cannot pursue a quantum-meruit claim as a matter of law.

4. Plaintiff cannot recover attorney's fees against a limited partnership.
5. There is no evidence of gross negligence such that Plaintiff could recover punitive damages.

## I. FACTUAL BACKGROUND

This case stems from Plaintiff's claim that a third party hacked the e-mail account of one of its owners, Jorge Flores, and sent changed wiring instructions to San Saba. Plaintiff claims that, as a result, it did not receive payment for certain pecan shipments. In conducting its business with San Saba, Plaintiff used a Yahoo e-mail account. *See* Flores Dep. at 33:14-23. Plaintiff failed to take any action to protect its e-mail account, such as requiring two-factor authentication before logging on or changing the password more frequently than once every 18 months to two years. *See id.* at 37:4-7, 38:14-39:1, 47:1-48:12, 55:2-20 & Ex. 22. Plaintiff's username and password for the Yahoo e-mail were nearly identical. *See id.* at 41:7-13. Plaintiff admits that it did "nothing" to ensure that the e-mails it sent were secure[.]" *Id.* at 40:1-4. Further, Mr. Flores admitted that Plaintiff could have discovered—and, in fact, later discovered—that a third party had sent e-mails from the Yahoo account because he could see the allegedly fraudulent e-mails on his mobile device. *See id.* at 82:11-21.

The parties purchased and sold pecans without incident in December 2015 and January 2016, but at some point in February 2016, Plaintiff contends that a hacker accessed its Yahoo e-mail account and sent San Saba fraudulent wiring instructions. *See* Second Am. Compl. ¶ 12; Flores Dep. at 151:11-17 & Ex. 100. Mr. Flores had previously changed wiring instructions and validly instructed San Saba to wire money to a company with a different name for shipping payments. *See* Flores Dep. at 142:22-143:14 & Ex. 72.

Because Mr. Flores originally sent wiring instructions via e-mail, had communicated changed wiring instructions via e-mail in the past, and because the e-mail used consistent language to Mr. Flores's language (i.e., ending the e-mails with "Best Regards!!!" or "Regards!!!"), Pamala Mann, Lindquist's administrative assistant, did not question the changed wiring instructions, although she did confirm via e-mail that Mr. Flores intended to change the instructions. *See* Deposition of Pamala Mann ("Mann Dep.") at 184:15-185:8, attached as Exhibit 2; Flores Dep. at 134:25-135:7, 135:14-136:21, 137:14-24, 142:22-143:14 & Exs. 49-56, 72. In addition, in Lindquist's and Mann's experience, as well as in the experience of San Saba's CFO, Keith Shahan, it was common for Mexican companies to change wiring instructions, and San Saba had never experienced an incident where a seller claimed it did not receive payment following a change in wiring instructions. *See* Deposition of Don Lindquist ("Lindquist Dep.") at 161:8-25, attached as Exhibit 3; Mann Dep. at 174:17-175:16, 184:7-185:3; Deposition of James K. Shahan ("Shahan Dep.") at 59:21-60:25, attached as Exhibit 4.

After receiving the changed wiring instructions, Plaintiff e-mailed San Saba to follow up on payment, and San Saba sent correspondence confirming that the money was being wired. *See* Flores Dep. at 151:19-152:18 & Exs. 101-102. Plaintiff further contends that it did not change wiring instructions on any subsequent occasion, although San Saba two other e-mails changing the wiring instructions from Plaintiff's e-mail account. *See id.* at 152:18-153:15.

Plaintiff now contends that it has not been paid for $1,539,136.50 of pecans, and has previously submitted a sworn affidavit in this lawsuit to that effect. *See* Second Am. Compl. ¶ 20; First Am. Compl. at Ex. B (Dkt. No. 22). However, Plaintiff has subsequently conceded that it overstated the amount of damages in its complaint, and that its damages should be reduced by at least $219,195.00 for which it already received payment. *See* Flores Dep. at 70:8-72:8 &

Ex. 29.

After Plaintiff discovered the alleged fraud and demanded payment, San Saba declined to pay Plaintiff because it had already paid for the pecans pursuant to instructions received from Plaintiff's e-mail account. *See* Lindquist Dep. at 151:23-153:13. Plaintiff filed this lawsuit on May 3, 2017. *See* Orig. Compl. (Dkt. No. 1). Plaintiff asserts claims for breach of contract, breach of the Texas Business and Commerce Code,[2] quantum meruit, and negligence, and seeks recovery of the contract price, punitive damages, attorney's fees, costs, and interest. Second Am. Compl. ¶¶ 46-47 & Prayer (Dkt. No. 38). For the reasons described below, the Court should grant summary judgment to San Saba on all of Plaintiff's claims.

## II. STANDARD OF REVIEW

A movant is entitled to summary judgment if the record establishes that "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c). Facts are material only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material factual dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . ." *Id.* To defeat summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Burger King v. Rudzewicz*, 471 U.S. 462, 474–78 (1985). Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus.*

[2] Plaintiff's claim that San Saba breached the Texas Business and Commerce Code is duplicative of Plaintiff's breach-of-contract claim. *See* TEX. BUS. & COM. CODE § 2.301 (obligating a buyer to "pay in accordance with the contract"). San Saba is entitled to summary judgment on that claim for the same reasons it is entitled to summary judgment on Plaintiff's breach-of-contract claim.

*Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## III. ARGUMENT

### A. San Saba is entitled to judgment as a matter of law on Plaintiff's breach-of-contract claims[3] because, by failing to secure its e-mail and thereby allowing its e-mail to be compromised, Plaintiff provided the purported hacker with apparent authority and cannot now disavow the propriety of instructions sent on Plaintiff's behalf.

San Saba is entitled to summary judgment on Plaintiff's breach-of-contract claim because, by clothing the alleged hacker with apparent authority by failing to secure its e-mail, Plaintiff is bound by the change in wiring instructions. Plaintiff contends, without proof other than its contention that Mr. Flores did not send certain e-mails, that an unknown third party accessed Mr. Flores's Yahoo e-mail account and sent unauthorized wiring instructions to San Saba. *See* Second Am. Compl. ¶ 12; Flores Dep. at 81:23-82:21. Mr. Flores admits that, on his mobile device, he could see e-mails that he did not send, *see* Flores Dep. at 82:11-21, and Plaintiff therefore had constructive knowledge (i.e., knew or should have known) that its e-mail had been hacked.

Under Texas law, a person may clothe a third party with apparent authority to act on that person's behalf by negligently failing to take an action that the person knows or should know would mislead the public to believe that the third party is the person's agent. *See, e.g.*, *McDuff v. Chambers*, 895 S.W.2d 492, 498-99 (Tex. App.—Waco 1995, writ denied); *Wyndham Hotel Co. v. Self*, 893 S.W.2d 630, 634-36 (Tex. App.—Corpus Christi 1994, writ denied). In *Wyndham*, for example, the court held that a hotel was liable for actions of a third party who "*appeared* to be an agent of the hotel responsible for coordinating water sports activities" despite the fact that the hotel presented evidence that the third party was not a hotel employee and was not acting

[3] This section applies to both Plaintiff's common-law breach-of-contract claim and its claim for breach of the Texas Business and Commerce Code, which are duplicative. *See* TEX. BUS. & COM. CODE § 2.301 (obligating a buyer to "pay in accordance with the contract").

within the scope of any authority given to him by the hotel. 893 S.W.2d at 636.

In this case, Plaintiff used a Yahoo e-mail account to conduct business and failed to take action to protect the e-mail account, such as requiring two-factor authentication before logging on to the e-mail account or changing the password more frequently than once every 18 months to two years. Flores Dep. at 37:4-7, 38:14-39:1, 47:1-48:12, 55:2-20 & Ex. 22. Plaintiff's username and password for the Yahoo e-mail were nearly identical. *See id.* at 41:7-13. Plaintiff admitted that it did "nothing" "to ensure that the e-mails [it] sent from [the] mobile device, [the] tablet and [the] laptop were secure[.]" *Id.* at 40:1-4. In short, Plaintiff failed to take actions necessary to secure its e-mail account that it used to conduct business.

Further, Plaintiff admits that he could have discovered—and, in fact, later discovered—that a third party had sent e-mails from its Yahoo account. *See id.* at 82:11-21. In short, Plaintiff had constructive knowledge, even if it did not have actual knowledge, of the fact that a third party was purportedly using its e-mail account. *See El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 948 (W.D. Tex. 2008) ("Unlike actual knowledge, constructive knowledge charges an individual with knowledge of that which in the exercise of reasonable care he should have known." (citation and internal quotation marks omitted)). By failing to take action despite constructive knowledge of the purported hacking of its e-mail account, Plaintiff gave the third party apparent authority to act on its behalf. *See McDuff*, 895 S.W.2d at 498-99; *Wyndham Hotel Co.*, 893 S.W.2d at 634-36. Thus, because Plaintiff negligently allowed a third party to access its account and had constructive knowledge of that access, Plaintiff gave the third party apparent authority to change wiring instructions. Plaintiff cannot now complain that the payment based on those wiring instructions constituted a breach of the parties' contract.

**B. <u>Plaintiff cannot pursue a negligence claim as a matter of law because it only seeks to recover its contract damages.</u>**

Plaintiff's negligence claim is barred by the economic-loss doctrine because, under Texas law, a party cannot recover in tort for a purely economic loss. Plaintiff seeks solely the amount it contends was owed under the parties' contract: $1,539,136.50. Second Am. Compl. ¶ 46 (noting that it seeks $1,539,136.50 as its "damages for suit on breach of contract [and] negligence . . . .").

Although the contractual relationship of the parties could create duties under both contract law and tort law, the "nature of the injury most often determines which duty or duties are breached." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). When the injury is "only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* "[I]f the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). "In determining whether the plaintiff may recover on a tort theory, it is . . . instructive to examine the nature of the plaintiff's loss." *Id.* Where "the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract." *Id.*

Here, the cause of action sounds in contract—not in tort. Plaintiff seeks *the same damages* that it sought in its breach-of-contract claim. *See* Second Am. Compl. ¶ 46. Rather than take responsibility for its poor data security, Plaintiff attempts to shift blame to San Saba. San Saba's alleged liability results solely from conduct in its performance—more specifically, its alleged breach of performance—in paying the amount Plaintiff contends it is owed under the parties' contract. *See id.* ¶ 42. Moreover, Plaintiff's alleged loss stems exclusively from the subject matter of the contract—the purported failure to provide payment to Plaintiff following delivery of the pecans. *Id.* San Saba's alleged conduct would not give rise to liability

independent of the fact that a contract exists between the parties and, accordingly, Plaintiff's claim lies in contract rather than in tort. *See, e.g.*, *Jim Walter Homes, Inc.*, 711 S.W.2d at 618; *DeLanney*, 809 S.W.2d at 494. Summary judgment is therefore proper on Plaintiff's negligence claim.

**C. <u>Plaintiff is not entitled to attorney's fees as a matter of law both because its breach-of-contract claim fails and because Plaintiff cannot recover attorney's fees against a limited partnership.</u>**

Plaintiff seeks attorney's fees under Section 38.001 of the Texas Civil Practice and Remedies Code against San Saba Pecan, LP, *see* Second Am. Compl. ¶ 44 (Dkt. No. 38); however, that section does not apply to San Saba, which is a limited partnership. Section 38.001 only applies to corporations and individuals under its plain language:

> A person may recover reasonable attorney's fees from an *individual or corporation*, in addition to the amount of a valid claim and costs, if the claim is for: . . . a sworn account; or . . . an oral or written contract.

TEX. CIV. PRAC. & REM. CODE § 38.001(7), (8) (emphasis added).

Both Texas and federal courts agree that, under the plain language of the statute, Section 38.001 does *not* allow for an award of fees against a limited partnership. *See, e.g.*, *Windmill Invs., LLC v. Redhill Realty Invs., LP*, No. 5:16-cv-345-OLG, 2017 WL 3713471, at *1 (W.D. Tex. June 13, 2017) (holding no attorney's fees against limited partnership because "Section 38.001 of the Texas Civil Practice and Remedies Code provides for the recovery of attorney's fees in breach of contract claims 'from an individual or corporation,' which Texas courts have interpreted to exclude recovery from limited partnerships and limited liability companies"); *Choice! Power, LP v. Feely*, 501 S.W.3d 199, 214 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("We hold that section 38.001 of the Civil Practice and Remedies Code does not permit recovery against a limited partnership."); *Mor-Pak Specialties, Inc. v. Andra Grp., LP*, No. 05-16-00864-CV, 2017 WL 3405185, at *3 (Tex. App.—Dallas Aug. 9, 2017, no pet.) ("Because

attorney's fees are not recoverable from limited partnerships under chapter 38 of the civil practice and remedies code, we conclude that appellant cannot recover attorney's fees from appellee in this case."); *EXCO Oper. Co., LP v. McGee*, No. 12-15-000087-CV, 2016 WL 4379484, at *2 (Tex. App.—Tyler Aug. 17, 2016, no pet.) ("[A] person may not recover attorney's fees under this section [38.001] against a partnership.").

Plaintiff pleads, and the evidence confirms, that San Saba is a limited partnership. *See* Second Am. Compl. ¶ 7 (Dkt. No. 38); Lindquist Dep. at 53:6-9. Because Plaintiff must have a statutory or other legal basis to recover attorney's fees for its breach-of-contract claim, and because the only basis on which Plaintiff relies—Section 38.001 of the Texas Civil Practice and Remedies Code—does not apply to limited partnerships, Plaintiff may not recover attorney's fees in this lawsuit. *See Windmill Invs., LLC*, 2017 WL 3713471, at *1; *Choice! Power, LP*, 501 S.W.3d at 214; *Mor-Pak Specialties, Inc.*, 2017 WL 3405185, at *3; *EXCO Oper. Co., LP*, 2016 WL 4379484, at *2.

**D. <u>Plaintiff cannot pursue a quantum-meruit claim because the undisputed evidence establishes that the parties entered into an express contract for the purchase and sale of pecans.</u>**

Because the parties indisputably entered into an express agreement, Plaintiff cannot recover under an implied-contract theory. Although the parties dispute whether San Saba complied with the payment terms, the parties do not dispute that San Saba agreed to buy, and Plaintiff agreed to sell, a quantity of pecans for an agreed-upon price provided the pecans met certain specifications. *See* Second Am. Compl. ¶ 9; Lindquist Dep. at 110:7-113:21, 136:14-138:24 & Exs. 138-139. Accordingly, the parties do not dispute that a contract existed for the purchase and sale of pecans.

Under Texas law, as recognized by both state and federal courts, a party may not recover under quantum meruit if an express contract governs the subject matter. *See, e.g., U.S. Quest*

*Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000); *Jhavier v. Zapata Off-Shore Co.*, 903 F.2d 381, 384 & n.10 (5th Cir. 1990); *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). Although there are exceptions to the general rule, such as where a plaintiff partially performs under a contract but is precluded from completing performance because of the defendant's breach, *see Truly*, 744 S.W.2d at 936, those exceptions do not apply here. Because Plaintiff pleads, and San Saba does not dispute, the existence of an express contract, San Saba is entitled to summary judgment on Plaintiff's quantum-meruit claim.

**E. <u>The Court should grant summary judgment to San Saba on Plaintiff's punitive-damages claim both because Plaintiff cannot pursue a negligence claim and because there is *no evidence* of fraud, malice, or gross negligence.</u>**

As described above, Plaintiff cannot pursue a negligence claim because that claim is barred by the economic-loss doctrine. *See supra* Section III.B. In the absence of a negligence claim, Plaintiff cannot recover punitive damages as a matter of law. *See Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 859 n.10 (5th Cir. 2004) ("Under Texas law, punitive damages are not available for breach of contract.").

In addition, Plaintiff cannot recover punitive damages because there is no evidence—much less the requisite "clear and convincing evidence"—that San Saba acted fraudulently, maliciously, or with gross negligence. *See* TEX. CIV. PRAC. & REM. CODE § 41.003(a), (b). The Court dismissed Plaintiff's prior fraud claim, *see* Order at 1 (Dkt. No. 28), and Plaintiff has no evidence (and has not alleged) that San Saba acted with malice, so Plaintiff's sole basis for seeking punitive damages must be gross negligence. Plaintiff cannot, however, establish gross negligence, which requires:

> an act or omission:
>
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001(11).

There is no evidence that San Saba's compliance with an e-mail that indisputably came from Plaintiff's e-mail account and contained language that was consistent with Plaintiff's prior communications involved "an extreme degree of risk" or that San Saba knew the risk involved but nonetheless proceeded to follow the wiring instructions. San Saba took care to confirm the change in wire instructions via e-mail. *See* Mann Dep. at 184:7-185:3; Shahan Dep. at 59:21-60:25. In addition, in Lindquist's, Mann's, and Shahan's experience, it was common for Mexican companies to change wiring instructions, and San Saba had never experienced an incident in which a seller claimed not to have received San Saba's payment via wire transfer following a change in wiring instructions. *See* Lindquist Dep. at 161:8-25; Mann Dep. at 174:17-175:16, 184:7-185:3; Shahan Dep. at 59:21-60:25.

The Court may properly grant summary judgment to San Saba where there is no evidence of gross negligence. *See Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) (affirming a district court's decision to grant summary judgment to defendant on a punitive-damages claim where "there is no material question of fact as to the reckless nature of the defendant's conduct"); *Ewing v. Iron Tiger Logistics, Inc.*, No. 3:10-cv-1211-O, 2011 WL 13229253, at *6 (N.D. Tex. Apr. 5, 2011) (granting summary judgment on punitive-damages claim despite fact that trucking accident occurred when truck driver violated federal regulations by failing to get sufficient rest because there was no evidence of gross negligence). Because San Saba took care to confirm the wiring instructions received, observed the language in the e-mails to be consistent with language Mr. Flores had used in the past, routinely had other suppliers change wiring instructions, and had never experienced any issue with wire transfers in the past, there is no

evidence that San Saba was grossly negligent. Accordingly, the Court should grant summary judgment to San Saba on Plaintiff's punitive-damages claim.

## IV. CONCLUSION

For the reasons set forth above, San Saba respectfully requests that this Court grant summary judgment to San Saba on all of Plaintiff's claims.

Respectfully submitted,

*/s/ J. Meghan Nylin*
Gregory D. Binns
Texas Bar No. 24027148
J. Meghan Nylin
Texas Bar No. 24070083
Thompson & Knight LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201
(214) 969-1700
Fax: (214) 969-1751
gregory.binns@tklaw.com
meghan.nylin@tklaw.com

*Counsel for San Saba Pecan, LP*

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 19th day of June, 2018, which will send notification of such filing to the following:

Javier Espinoza, Esquire
Michael D. Tuttle, Esquire
Espinoza Law Firm, PLLC
2211 Danbury Street
San Antonio, TX 78217

*/s/ J. Meghan Nylin*
J. Meghan Nylin