# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

J.F. NUT COMPANY, )
Plaintiffs, ) CAUSE NO.
VS. ) 1:17-CV-405-SS
SAN SABA PECAN EXPORTS )
CORPORATION and SAN SABA )
PECAN, LP, )
Defendants. )

---

ORAL DEPOSITION OF

PAMALA MANN

Thursday, April 12, 2018

---

Oral deposition of PAMALA MANN, produced as a witness at the instance of the Plaintiff, and duly sworn, was taken in the above-styled and numbered cause on the 12th day of April, 2018, from 10:07 a.m. to 5:25 p.m., before Deborah L. Endler, Notary Public in and for the State of Texas, reported by stenographic means, at the offices of Thompson & Knight, LLP, 98 San Jacinto Boulevard, Suite 1900, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

A P P E A R A N C E S

FOR THE PLAINTIFFS:

Michael D. Tuttle, Esquire
Javier Espinoza, Esquire
Espinoza Law Firm, PLLC
2211 Danbury Street
San Antonio, Texas 78217
210.229.1300

FOR THE DEFENDANTS:

Gregory D. Binns, Esquire
Thompson & Knight, LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
210.969.1700

ALSO PRESENT: Keith Shahan
Don Lindquist

# I N D E X


APPEARANCES . . . . . . . . . . . . . . . . . . . . 2

Stipulations. . . . . . . . . . . . . . . . . . . . 5

PAMALA MANN

Examination by Mr. Tuttle. . . . . . . . . . 6

Signature and Changes . . . . . . . . . . . . . . 230

Reporter's Certificate . . . . . . . . . . . . . . 232


# E X H I B I T S


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Organizational Chart San Saba Pecan | 34 |
| 2 | Wire Transfer Instructions | 77 |
| 3 | 12/10/2015 emails between Don Lindquist and Jorge Flores | 125 |
| 4 | 12/10/2015 email from Pamala Mann to Jorge Flores | 127 |
| 5 | 12/10/2015 email from Jorge Flores to Pamala Mann | 128 |
| 6 | 12/10/2015 email from Pamala Mann to Jorge Flores, with attachments | 129 |
| 7 | 12/23/2015 email from Don Lindquist to Pamala Mann, Jorge Flores, Hilary Adams, 4 POs | 138 |
| 8 | 12/23/2015 email from Don Lindquist to Pamala Mann and Jorge Flores | 138 |
| 9 | 12/23/2015 email from Pamala Mann to Jorge Flores, POs and Specs | 139 |
| 10 | 12/23/2015 emails between Pamala Mann, Lizz Lange, Jorge Flores | 141 |
| 11 | 12/23/2015 email from Lizz Lange to Pamala Mann | 142 |


(continued)

E X H I B I T S (continued)


| | | |
|---|---|---|
| 12 | Documents, check request, log sheet, purchase order, product check | 145 |
| 13 | 2/17/2016 email from Jorge Flores to Pamala Mann, JF Nut Wire Instruction | 179 |
| 14 | Wire Transfer Instructions, 2/17/16 | 199 |
| 15 | Wire Transfer Instructions, 2/17/16 | 199 |
| 16 | Wire Transfer Instructions, 2/18/16 | 200 |
| 17 | Wire Transfer Instructions, 2/29/16 | 205 |
| 18 | Wire Transfer Instructions, 3/4/16 | 206 |
| 19 | Notes of Pamala Mann | 219 |

P R O C E E D I N G S

MR. BINNS: Before we start, I got a couple housekeeping matters. One that we discussed before hand. In the Deposition Notice of Pam Mann and as well as the Deposition Notice of Keith Shahan that will take place later today, they were both listed as authorized representatives of San Saba Pecan, which I understand based on the correspondence we had earlier regarding whether or not they were 30(b)(6) witnesses, they are not. And they are not here as authorized representatives of San Saba Pecan, LP or in San Saba Pecan Exports Corporation. Instead they are being deposed in their individual capacities. Is that correct?

MR. TUTTLE: That's correct.

MR. BINNS: One other thing. I'm sure you will be asking a question at some point about whether she has been deposed before. She has been deposed before. It was in connection with a case in which her son passed away.

So during this deposition, I anticipate that you might see some tears or something like that. She'll let you know if there needs to be a break during it. It's bringing up some old memories on that type of thing. Otherwise, just power through it in

that instance. I just want to let you know, because I know your first instinct is going to be "let's take a break." But we talked about it beforehand and if it comes up, we're just going to keep going so we can get it done today.

MR. TUTTLE: And my understanding that today, is that Keith is here, Shahan, as a client representative of which company, which entity?

MR. BINNS: San Saba Pecan, LP.

MR. TUTTLE: And of course, Don Lindquist is here as a client representative of --

MR. BINNS: San Saba Pecan Exports Corporation.

MR. TUTTLE: Okay.

PAMALA MANN

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. TUTTLE:

Q. Will you please state your name for the record?

A. Pamala Mann.

Q. And Ms. Mann, we're going to be taking a deposition, probably going to take a few hours here today. And there's a few things, I understand from your attorney that you've taken a deposition before,

can't go to Amanda and ask her if she had anything to do with the wire transfers that were involved in this case; right?

A. Correct.

Q. And to the extent that you know that Amanda may have handled a wire transfer at one point or another, she may have done it twice in the last 10 years; is that accurate?

A. Yes.

Q. And so the information that is going to the bank is coming from you; correct?

A. Yes.

Q. And so, of course, you're expecting the supplier, your customer, to give it to you, but the bank's information is coming from you; correct?

A. Yes.

Q. And how many times in your career with San Saba have you had to change the instructions for a particular customer? In other words, a customer says you know what, I don't want you to send it to this bank account any more, I want you to send it to this other bank account? How often does that happen?

A. It can be pretty regular. I mean, it's not uncommon.

Q. And in all those times that that has

occurred, those bank accounts are typically under that customer's name; correct?
A. No.
Q. What are circumstances where they are not?
A. Um, well, we have one, American Pecan, they changed their name or they may put it, if it comes in under one name and one bank, it could go in under your wife's name, brother's, anybody's name, I don't know if these people are related, to a totally different bank. That happens quite a bit, nearly every year.
Q. How often? Once a year? Twice a year? Three times a year?
A. More than that. This year alone just three or four customers they have done it. So you're talking two to three times on each one, or at least two.
Q. Sure. And I want to go through those. Let's talk about the two times that it's happened this year. Tell me the circumstances where that changed.
A. American Pecan changed their's from American Pecan at one bank to Pecan, MIS at something different.
Q. And did they give you notice that they changed their name?
A. Yes.

Q. Sure, I understand that. But that's not my question. My question is on that page that we are looking at, which I believe is bate stamped 101, there is nothing on this paged bate stamped 101 that says that Jude Okoh is J.F. Nut's financial controller?

A. True. None of them. It doesn't tell you if they are financial officer. It doesn't tell you if they are brother, sister, officer.

MR. TUTTLE: Objection, nonresponsive. That wasn't my question.

Q. My simple question, and I believe you answered it, doesn't state Jude Okoh is the financial controller for J.F. Nut; correct?

A. It doesn't say that, correct.

Q. And then in your response, or that in and of itself, before getting into your response, did Exhibit 13, at least the first two pages of it, did that raise any red flags for you?

A. No.

Q. Why not?

A. It came from Jorge Flores' email address. It -- I mean the broken English. There was no reason for me to not believe it wasn't from him.

Q. Okay. And if that's the case, then why do you respond by saying "So do not send to the

instructions I have on file"?
A. Double checking. I mean trying to be cautious.
Q. And why did you feel like you needed to be cautious?
A. I send a lot of money out. I try to be as cautious as possible. But I don't remember on that particular day.
Q. Sure.
A. I don't remember.
Q. And so you would agree with me it's important to be as cautious as possible when you are dealing with sums of money as large as you are dealing with with J.F. Nut; correct?
A. Yes.
Q. And, in fact, the smallest wire, to my recollection, was in the range of 200,000; correct?
A. Probably.
Q. And all together we're dealing with probably something close to in excess of a million dollars; correct?
A. Yes.
Q. And so when you are dealing with those quantities of money, it's very important to be careful; correct?