UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| J.F. NUT COMPANY, S.A. De C.V., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CAUSE NO. 1:17-CV-405-SS |
| | § | |
| SAN SABA PECAN, LP, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, J.F. NUT COMPANY, S.A. De C.V., files this Motion for Summary Judgement respectfully showing the court as follows:

**I.**

**BACKGROUND AND SUMMARY OF THE ARGUMENT**

On or about December of 2015, Plaintiff and Defendant negotiated the terms for the sale of goods whereby Plaintiff, JF Nut Company (JF Nut), would sell pecans to Defendant, San Saba Pecan, L.P. (San Saba). Ex. J. As part of the dealings between the parties, San Saba requested (via email) that JF Nut send wiring instructions (via email). Ex. A. JF Nut provided the information as requested on December 10, 2015. Ex. A.

The first transactions took place in December and payment was made by San Saba via wire as agreed. *See* Pamela Mann Depo. pp.142-143. However, on February 16, 2016, an unauthorized person sent emails from JF Nut's email account requesting the payment be made to a third-party that was completely unconnected and unrelated to JF Nut (the "Imposter"). Ex. K. The instructions differed in every aspect as to the financial institution, swift code, CLABE number, address, account number, and account styling. Ex. B. Neither Don Lindquist nor Pamela Mann verified the validity of the new wire instructions. Ex. M. Defendants subsequently forwarded payment per the Imposter's wire

instructions. Ex. L. Plaintiff never received payment totaling **$1,319,941.50** for pecans provided and for which no payment was received. Ex. M.

In fact, San Saba's former CFO, James Shahan testified as follows on page 78 of his deposition:

```
·8· · · Q.· ·And so if we pulled those for the jury and the
·9 court, each one of those POs and invoices that's being
10 referred to in the last page of Exhibit 146, that would be
11 accurate for all of the transactions that are at issue
12 here with the exception of the very last one, correct?
13· · · A.· ·I think that's correct, yes.
14· · · Q.· ·Okay.· Now, as you sit here today, are you aware
15 of any term or condition that J.F. Nut Company didn't live
16 up to whereby they weren't entitled to receive payment for
17 the pecans that they provided to San Saba?
18· · · A.· ·No.
19· · · Q.· ·And as far as -- and it's your testimony as you
20 sit here today, at least as far as you're aware, that J.F.
21 Nut Company did, in fact, do everything that they needed
22 for San Saba to provide them payment?
23· · · A.· ·Yes.
```

Exhibit N. (also attaching Exhibit 146 of Mr. Shahan's Deposition). Furthermore, Exhibit 146 as attached to the deposition summarized the six transactions for which a beneficiary other than JF Nut was paid money.

San Saba's failure to confirm the unsolicited email changing the wiring instructions caused the San Saba's loss. Ex. I. Not only did San Saba change the wiring instructions once, but two other times as well, with each one being having a different beneficiary than the last, totally unrelated to J.F. Nut. Ex. B, at 3, 6, & 9.

Plaintiff communicated the non-receipt of payment to Defendant. Ex. O. As such, Plaintiff maintains Defendant has failed to pay on its delinquent account in the amount of **$1,319,941.50**. Lindquist Depo 165. On information and belief, Defendant made payments totaling **$1,319,941.50** to an unknown third party. Ex. N. Plaintiff did not receive any direct or indirect benefit from the **$1,319,941.50** wrongfully, and unreasonably sent without Plaintiff's authorization to the unknown

third party. Ex. N. Defendant received the benefit of the product but refused and continues to refuse to pay the amounts due and owing under the invoices and agreement. Ex. M. As such, Defendant has breached the contract by failing to pay the agreed upon price and has been unjustly enriched, causing Plaintiff to suffer significant detriment on the agreed upon exchange of performances.

## II.
## SUMMARY JUDGEMENT STANDARD

Summary judgement is proper if the movant shows that there are no genuine disputes of material fact and that the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014). The party bringing the motion for summary judgement bears the initial burden of demonstrating the absence of a genuine issue of material fact through any form of evidence admissible at trial. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,322-23 (1986).

## III.
## MOTION FOR SUMMARY JUDGEMENT
## SUMMARY JUDGEMENT EVIDENCE

Pursuant to Fed. R. Civ. P. 56(c)(1) Plaintiff hereby gives notice of its intent to rely on the following summary judgement evidence:

| | | |
|---|---|---|
| Exhibit A | Jorge Flores' Wire Instructions |
| Exhibit B | Imposter's Various Wire Instructions |
| Exhibit C | Purchase Orders from December 10, 2015 through May 3, 2016 |
| Exhibit D | Deposition Testimony of Don Lindquist |
| Exhibit E | Exhibit #146 of Deposition of Don Lindquist |
| Exhibit F | Deposition Testimony of Pamela Mann |
| Exhibit G | Course of Performance for Payment |

| | |
|---|---|
| Exhibit H | Phone Records January 20, 2016 through March 19, 2016 |
| Exhibit I | Exhibit #147 & #148 of Deposition of Don Lindquist |
| Exhibit J | Initial Communications |
| Exhibit K | Imposter's First E-mail |
| Exhibit L | First Wire to Imposter |
| Exhibit M | Deposition of Keith Shahan |
| Exhibit N | Spreadsheet of Accounting |
| Exhibit O | JF Nut Communication of Non-receipt |

## ARGUMENTS AND AUTHORITIES

### A. CASE LAW

#### i. *Uniform Commercial Code & Common Law*

Where parties enter into a contract for the sale of goods, the Uniform Commercial Code ("U.C.C.") applies, displacing all common law rules regarding breach of contract and substitutes instead those rules set forth in the U.C.C. *Glenn Thurman, Inc. v. Moore Const.*, 942 S.W.2d 768, 771 (Tex. App.—Tyler 1997, no pet.). The State of Texas has adopted the U.C.C. and the Texas Business and Commercial Code mirrors the rules and procedures within the U.C.C. The U.C.C. supersedes common law, but to the extent the U.C.C. does not resolve a question, courts generally look to the common law relating to claims made in equity. *Omni USA, Inc. v. Parker-Hannifin Corp.,* 964 F. Supp. 2d 805, 840-43 (S.D. Tex. 2013).

#### ii. *Effect of Acceptance of Goods*

The effect of a buyer's acceptance of goods triggers an obligation to pay the seller an amount at the contract rate for goods accepted. U.C.C. § 2-607(1); Tex. Bus. & Com. Code § 2.607(a); *Imperial Zinc Corp.*, No. H-08-0551, 2011 U.S. Dist. LEXIS at 34-35. Once the buyer has accepted the goods,

the risk of loss likewise transfers. If the buyer fails to pay the price as it becomes due to the seller, the seller may recover the price of the goods accepted together with any incidental damages. If the seller has delivered goods, and buyer has accepted those goods, the buyer's remedies are limited to damages for breach of warranty of the goods. U.C.C. § 2-709(1); *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188, 189 (5th Cir. 1975); Tex. Bus. & Com. Code § 2.709(1); *Moore Constr.*, 942 S.W.2d at 772.

### iii.   *Breach of Contract*

The elements for breach of contract are 1) a valid contract exists; 2) the plaintiff performed; 3) the defendant breached; and 4) the plaintiff suffered as a result. *Barnard v. Home Depot U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 78382, at *6-7 (W.D. Tex. 2006); *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no writ).

### iv.   *Unjust Enrichment*

Where goods have been furnished for the person to be changed, and the person to be charged receives, accepts, and benefits from such materials and the person furnishing the goods makes sufficient notification that he expects to be compensated for the goods received and enjoyed, failure to reasonably compensate the sender results in unjust enrichment on behalf of the receiver. *Vortt Exploration, Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 943, 944 (Tex. 1990).

### v.   *Best Position to Prevent Fraud*

Case law is scant on the issue merchant assumption of risk in preventing fraud. Courts instead look to analogous facts where financial institutions breach a duty to prevent fraud to inform the legal conclusion as applied to merchants. Accordingly, whichever party is in the best position to prevent the fraud by exercising reasonable care is that which suffers the loss. *Arrow Truck Sales, Inc., v. Top Quality Truck & Equip., Inc.*, No. 8:14-cv-2052-T-30TGW, 2015 WL 4936272, at *5-6 (M.D. Fla. 2015).

## B.   DEFENDANT SAN SABA BREACHED THE CONTRACT

a. *There is an Enforceable Contract Between JF Nut and San Saba Pecan, L.P.*

Defendant asserted in its answer that Plaintiff is barred from breach of contract claims due to the statute of frauds. Defendant sent Plaintiff eighteen (18) purchase orders between December 10, 2015 and May 5, 2016. Ex. C. Defendant received and accepted all shipments stemming therefrom. Additionally, Defendant's representative, Don Lindquist, admitted in his deposition that there indeed existed an agreement between Plaintiff and Defendant for the sale and receipt of pecans as developed through purchase orders and electronic communication. Ex. D, LINDQUIST DEP. at 134:18-138:24. Accordingly, U.C.C. § 2-201(3)(b-c) and Tex. Bus. & Com. Code § 2.201(c)(2-3) support the fact that an enforceable contract exists between JF Nut and San Saba Pecan, L.P.

b. *San Saba Received and Accepted Shipment from JF Nut*

Plaintiff's shipment of pecans to fulfill purchase orders #1882, #1883, #1888, #1889, #1890, and #1891 were received, accepted, and benefitted therefrom by Defendant but Plaintiff was not compensated for these shipments. Ex. B & E. Per U.C.C. § 2-607(1) and Tex. Bus. & Com. Code § 2.607(a), Defendant owes an obligation to Plaintiff for the pecans it accepted and received from Plaintiff. Defendant's claim that it does not owe an obligation to Plaintiff because Defendant forwarded the requested payment is unfounded. Because Defendant has not returned the pecans received, the only recovery available to Defendant is under breach of warranty theories. No evidence suggests that the pecans harbored defects nor did Defendant attempt to return those pecans. As such, Plaintiff did not receive payment and continues to suffer a deficit of which Defendant will not rectify. Accordingly, U.C.C. § 2-709(1) provides that Plaintiff may seek recovery for the price of pecans previously agreed upon by the parties in relation to the pecans accepted and received but not compensated for.

c. *Wire Instructions Were Not Consistent with the Order of Preference*

Before the events made basis of this suit, Defendant's IT Department forwarded security information to its employees in efforts to spread awareness of e-mail scams and fraud. EX. F, MANN DEPO 93:3-94:16. Plaintiff's first set of wire instructions were accepted without objection as the appropriate form of payment for purchase orders fulfilled in December 2016. Pamela Mann initiated the payment pursuant to the initial instructions, creating an established common basis of performance for forwarding payment. Defendant and Plaintiff communicated regarding the release of payment through the Federal Reserve Bank, confirmation of deposit receipt, and reconciliation of price discrepancies. EX. G.

When Pamela Mann received the first modification to the wire instructions, there is no evidence showing that such modification was subject to any type of multifactor authentication such as a signed fax, phone call, or text message to or from Jorge Flores, as cautioned by Defendant's IT Department. Record exists of one phone call made to Jorge Flores' phone, indicating that such modification was out of the scope of the parties' established common basis of performance. But this was the *only* phone call to Jorge Flores during the period of compromise and lasted only thirty-six (36) seconds. EX. H. It is fundamentally impossible to confirm a new set of wire instructions within that period of time. Likewise, none of either parties' witness depositions indicate that a confirmation of the modification occurred between any of Defendant's employees and Jorge Flores.

Within the scope of commercial trade, parties relying heavily on electronic communication are cognizant of the risks involved with the advent of hacking, spoofing, and phishing to perpetuate Business E-mail Compromises. EX. I. Plaintiff's ordinary behavior in previous and current transactions is diametrically opposed to the behavior exhibited from the Imposter's e-mails. Even if wire instruction modification is not outside the realm of possibility, subsequent changes in rapid succession should trigger a prudent person to initiate a secondary level of authentication.

Per the order of preference under U.C.C. § 1-303 and Tex. Bus. & Com. Code § 1.303, and looking first to the course of performance, it is clear that Defendant, knowing of the repeated occasions for performance, failed to verify a material change in the terms of the agreement, and accepted the change to its performance without objection. Second, the first two wires sent in accordance with the original instructions, created the basis of expected performance by Defendant. Third, within the trade, modifications to wire instructions that signify a change in beneficiary with no connection to the intended recipient, require verification to avoid potential financial losses. Defendant's loss is a product of its own failure to verify subsequent set of wire instructions, none of which had any characteristic in common with the original.

### d. *San Saba's Failure to Forward Payment Has Injured JF Nut*

Defendant has failed to compensate Plaintiff for the aforementioned invoices, causing a deficit to Plaintiff in the amount of **$1,319,941.50**. Defendant maintains possession and receives a commercial benefit from the pecans sent by Plaintiff. As such, Defendant has been unjustly enriched by the performances of Plaintiff, of which Plaintiff sufficiently communicated an expectation of compensation, with no benefit to Plaintiff. To contrast, had Plaintiff sent a shipment of pecans to an unknown third party at an Imposter's request (under the guise of Defendant) and Defendant forwarded payment prior to receiving pecans, Plaintiff would be obligated to Defendant to supply the agreed upon pecans, or enjoy unjust enrichment for its nonperformance.

### e. *San Saba in Best Position to Prevent Fraud*

Defendant's representative, Don Lindquist, expounded on San Saba's business procedures during his deposition testimony. Mr. Lindquist indicated that San Saba does not utilize a specified procedure within its accounting department, nor does there exists procedure for handling modified wire instructions. EX. D, LINDQUIST DEPO. at 76:17-78:9 & 149:5-149:25. Counter to industry standards, San Saba did not possess a means to detect fraudulent activity, nor a means to verify changes

to payment mediums that historically carry a significant level of risk absent verification procedures. Defendant maintained the best position to verify changes and prevent fraud.

## IV.
## ASSERTION OF FACTS NOT SUPPORTED

Plaintiff is also entitled to summary judgement under Rule 56(e). Adequate time for discovery has passed, yet Defendant has produced no evidence of the following essential elements of its negligence claim:

1. There is no evidence that JF NUT owed any legal duty to SAN SABA to protect its e-mail server;

2. There is no evidence that JF NUT affirmatively caused or induced the Imposter to send fraudulent wire instructions under the Prevention Doctrine as asserted;

3. There is no evidence that JF NUT was "hacked", rather than "spoofed" by Imposter;[1]

4. There is no evidence that JF NUT failed to check its business account ledger.

## V.
## RELIEF REQUESTED

Plaintiff requests this court grant final summary judgement and dispose of the entire case. Plaintiff requests the court order a judgement of **$1,319,941.50,** plus interest and attorney's fees, after allowing all just and unlawful offsets, payments, and credits. This amount represents Plaintiff's damages for suit of breach of contract, unjust enrichment, and sworn account. Plaintiff is further entitled to pre-judgement and post-judgement interest.

---

[1] There is a significant difference between being "hacked" and being "spoofed". "Hacking" requires physically compromising an e-mail server and sending an e-mail from the actual account. "Spoofing" is mirroring an e-mail address visually but sending from a different server than that which hosts the true e-mail server. The Imposter could have sent the e-mail via "spoofing," which is unequivocally impossible to prevent through any measure of security protocol.

## VI.
## PRAYER

Plaintiff J.F. NUT COMPANY, S.A. De C.V respectfully prays that the Court grant this Motion for Summary Judgement and render a take-nothing judgement against Defendant SAN SABA PECAN, L.P. on all claims. Plaintiff J.F. NUT COMPANY, S.A. De C.V further prays for any further or additional relief to which it may be entitled.

Respectfully Submitted,

**Espinoza Law Firm, PLLC**
2211 Danbury Street
San Antonio, TX 78217
210.229.1300 t
210.229.1302 f
www.espinozafirm.com


__/s/Michael D. Tuttle_____
**JAVIER ESPINOZA**
Texas Bar No. 24036534
javier@espinozafirm.com
**MICHAEL D. TUTTLE**
michael@espinozafirm.com
Texas Bar No. 24037620

And

Manuel Alejandro Pelaez-Prada
Texas Bar No. 24027599
mpp@lonestaradr.com
Pelaez Prada, PLLC
22211 IH-10 West, #1206
San Antonio, Texas 78257
210.361.0070 t

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 19th day of June, 2018, a true and correct copy of the foregoing was DELIVERED, MAILED, E-MAILED, or FAXED to:

J. Meghan Nylin
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2533
210.969.1700 t
210.969.1751 f
Meghan.nylin@tklaw.com

--and—

Joel M. Carson, III
Christopher A. Lauderman
Carson Ryan LLC
PO Box 1612 Roswell
575.291.7606
joel@carsonryan.com
chris@carsonryan.com

*Attorneys for Defendants*

             /s/ *Michael D. Tuttle*
            **MICHAEL DEAN TUTTLE**